FISHMAN & MALLON, LLP
ATTORNEYS AT LAW

305 BROADWAY
SUITE 900
NEW YORK, NY 10007-1187

(212) 897-5840
Telecopier: (212) 897-5841
Web pages:
www.tenantslaw.net
www.consumeratty.net
www.MyFairCredit.com

James B. Fishman
ΔKevin Mallon

*Susan K. Crumiller
†Jennifer M. Addonizio

ΔAlso admitted in CA
*Also admitted in NJ
†Also admitted in MA

Laurence H. Pearson
Of Counsel

Rhode Al Khani
Office Manager

August 15, 2011

***Via ECF***
Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY

Re: ***Massey v. On-Site Manager, Inc.***
Docket No. CV-11-2612(BMC)

Dear Judge Cogan,

We represent the plaintiff Dawn Massey in the above action. This letter is offered in opposition to the August 5, 2011 letter of Bret A. Scher, attorney for the defendant On-Site Manager, Inc. seeking dismissal of the complaint pursuant to FRCP 12(b)(6) based on the claim that the plaintiff executed a "release" of the claims asserted in the complaint.[1] For a variety of reasons, the defendant's motion is factually and legally baseless and must be denied, in its entirety:

1. The release-to the extent that it is at all enforceable-only pertains to claims that the plaintiff's consumer report was improperly obtained

[1] By order dated August 6, 2011 the Court converted the defendant's August 5, 2011 letter seeking permission to move for dismissal to a motion for such relief and directed opposition by August 15, 2011.

Re: ***Massey v. On-Site Manager, Inc.***
Docket No. CV-11-2612(BMC)

and not that it contains legally obsolete information;

2. The "release," to the extent it is attempted to be used here, is barred by New York law because it would illegally exculpate future willfull or grossly negligent conduct;

3. The "release" is unenforceable against claims of future negligent conduct;

4. Enforcement of the "release" violates public policy and would fully eviscerate the Fair Credit Reporting Act. ("FCRA")

## 1. THE "RELEASE," BY ITS PLAIN LANGUAGE DOES NOT BAR THE PLAINTIFF'S CLAIMS

The plain language of the release, dated November 1, 2010, unambiguously applies only to "impermissible access" claims, not to accuracy or content claims.

The key language of the "release" states, in pertinent part:

> In connection with my application for this apartment, I authorize all banks, corporations, companies, credit agencies, accountants, landlords, persons and employers, to release any information that they have about me to Vantage Properties LLC, its affiliates or its agents and ***I release them from any and all liability or responsibilty from doing so.***" (emphasis added)

This language plainly applies only to a claim that any of the listed entities impermissibly accessed a consumer report or otherwise accessed personal information about the applicant so that the applicant's request to rent an apartment could be properly and fully evaluated.[2] The "release," on its face, does

---

[2] "Impermissible access" claims under the FCRA arise from 15 USC §1681b. A related claim of obtaining a consumer report under false pretenses

not identify the defendant as the entity that Vantage would be using to prepare a consumer report and the plaintiff was therefore never told exactly who was covered by it.

The defendant suggests, without any legal authority, that the "release" should also apply to the plaintiff's claims in this action: that the defendant violated 15 USC § 1681e(a) and 1681(c)(a)(2) by including possessory judgments in consumer reports more than seven years after their issuance. The defendant's contention is simply wrong. The "release" does not bar, and cannot be used to bar, claims pertaining to the ***content*** of a consumer report that was not even requested, let alone prepared, at the time of its execution. It therefore has no application whatsoever to the plaintiff's claims in this action.

Next, the defendant claims that the last sentence of the "release" provides a further basis to dismiss the complaint. It does not. In doing so, the defendant conveniently ignores the express language of the "release" which expressly pertains only to ***"investigative consumer reports"*** not "consumer reports."(emphasis added)[3] Only the latter was issued by the defendant. As a result the "release" language relied on by the defendant does not have any relevance here.

---

arises under 15 USC § 1681q. ***See, e.g. Northrop v. Hoffman of Simsbury, Inc.*** 134 F. 3d 41 (2nd Cir. 1997); ***Ali v. Vikar Management Ltd.,*** 994 F. Supp. 492 (S.D.N.Y. 1998). Neither of those claims address either the content or accuracy of a consumer report, only the means used to obtain one.

[3] An "investigative consumer report," as defined by 15 USC § 1681a(e), is a consumer report "in which the information…is obtained through personal interviews with neighbors, friends, or associates of the consumer…" The plaintiff does not allege that the defendant prepared or furnished an investigative consumer report.

**2. NEW YORK LAW DOES NOT PERMIT PARTIES TO EXCULPATE THEMSELVES FROM CLAIMS OF FUTURE WILLFUL OR GROSSLY NEGLIGENT ACTS**

The defendant is attempting to exculpate itself from liability for preparing and issuing a consumer report ***after*** the execution of the "release."[4] It is inconceivable that the plaintiff could have, or should have, known that the "release," which was required by Vantage as part of its apartment rental application process, would later be used to bar her from enforcing her right to an accurate and legally current consumer report by a party she neither dealt with or had any knowledge of. Submitted herewith is an affidavit of the plaintiff stating that she had no knowledge of the defendant or any intention of releasing it defendant from any claim relating to the content of a consumer report it prepared about her.

New York does not permit individuals to release claims based on willful or grossly negligent conduct that has not yet occurred. "To the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have ben viewed as wholly void." ***Gross v. Sweet***, 49 NY. 2d 102, 106, 424 NYS 2d 365, 367 (1979) (citations omitted). The plaintiff's complaint in ths case alleges that the defendant willfully violated the FCRA. Accordingly, any argument that the "release" exempts the defendant from it's purported willful violation of the FCRA is simply wrong.

And, even if the conduct has already occurred, and already caused injury, a release covering unknown injury caused by that conduct is invalid unless the release was "fairly and knowingly made." ***Farrington v. Harlem Sav. Bank,*** 280 NY 1, 19 NE2d 657 (1939).

---

[4] The defendant prepared and issued the consumer report at issue here on November 18, 2010, 18 days after the execution of the "release."

A motion to dismiss based upon a release of claims must be denied when there are issues of fact regarding the parties' intentions. ***Mangini v. McClurg,*** 24 NY2d 556 (1969). If there is an allegation that a release from liability was improperly obtained or unenforceable, a motion to dismiss based upon it must be denied. ***e.g., Newin Corp. v Hartford Acc. and Indem. Co.,*** 37 NY2d 211, 217, 371 NYS2d 884 (1975).

**3. THE "RELEASE" IS UNENFORCEABLE AGAINST CLAIMS OF FUTURE NEGLIGENT CONDUCT**

The "release" is also innefective to the extent that defendant seeks to shield itself from the plaintiff's pleading of a negligent violation of the FCRA in the alternative to it's willful allegations. "We begin with the proposition, too well settled to invoke any dispute, that the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence . . . ." ***Gross, supra,*** at 308, 367.

The application completed and signed by the plaintiff was for residential housing, a basic necessity, and, as set forth in the plaintiff's within affidavit, she was not given the opportunity to have it reviewed by an attorney.

> The threshold consideration is whether the parties have a special relationship which would make enforcement of an exculpatory clause between them against the public interest. This occurs where the party seeking exculpation is in a business or profession which is either publicly regulated or providing an essential service to members of the public. Examples include common carriers and their passengers; public utilities and their customers; employers who impose the clause as a condition of employment and a host of statutorily created prohibited persons, such as ***landlords***, caterers, and those who maintain parking lots, gymnasiums, and other public places.

Re: ***Massey v. On-Site Manager, Inc.***
Docket No. CV-11-2612(BMC)

> In these relationships, the consumer's need for the service creates an inequality in bargaining strength which enables the purveyor to insist upon a release, generally on its own prepared form, as a condition to providing the service. As in any adhesion contract a true and voluntary meeting of the minds on the terms of the agreement is unlikely.

***Devito v. New York Univ. College of Dentistry,*** 145 Misc2d 144, 146 544 NYS 2d.109, (Sup Ct NY Co 1989) (internal citations omitted)(emphasis added).

To bind the parties, the language of a release must be understandable to a layperson, ***Gross v. Sweet, supra***; it must be "clear and unambiguous." ***Booth v. 3669 Delaware, Inc.,*** 92 NY2d 934, 680 NYS2d 899 (1998). The release cannot bind the parties unless it survives "close scrutiny" of all of these factors. ***Devito, supra,*** at 146. "All-encompassing or open-ended phrases such as 'any and all claims;' or 'any and all responsiblility or liability of any nature whatsoever' are considered insufficient to indicate an intention to waive injury occassioned by fault." Id. at 147.

A release covering unknown injury is invalid unless the release was "fairly and knowingly made." ***Farrington, supra.*** It is inequitable to allow a release to bar a claim where the releasor had little time for deliberation and that it was the result of overreaching or unfair circumstances. ***E.g., Bloss v. Va'ad Harabonim, 203 AD***2d 36, 37, 610 NYS2d 197, 200 (App Div 1st Dep't 1994).

**4. ENFORCEMENT OF THE "RELEASE" VIOLATES PUBLIC POLICY AND WOULD FULLY EVISCERATE THE FCRA**

The defendant, a credit reporting agency, is attempting to use the "release" to deprive the plaintiff of her ability to enforce her rights under the FCRA. However, consumers cannot waive statutory rights, as a matter of public policy. ***Alexander v. Gardner-Denver Co.***, 415 U.S. 36, 51 (1974) (no prospective waiver of statutory rights allowed); ***Parker v. DeKalb Chrysler Plymouth***, 673

F.2d 1178, 1180-81 (11th Cir. 1982***); Buford v. American Fin. Co.,*** 333 F. Supp. 1243, 1248 (N.D. Ga. 1971) (citing ***Brooklyn Savings Bank v. O'Neil,*** 324 U.S. 697, 704 (1945); ***Mills v. Home Equity Group, Inc.,*** 871 F. Supp. 1482, 1486 (D.D.C. 1994).

If the Court allowed this "release" to bar a consumer from enforcing their rights under the FCRA the statute would be fully eviscerated. Nobody who applied to rent an apartment or who applied for a credit card, or indeed any form of consumer credit, would ever be able to enforce their right to an accurate, complete, non-misleading and legally current credit report if their right to do so could be so easily eliminated.

In ***Abercrombie v. Wells Fargo Bank***, N.A., 417 F. Supp. 2d 10069 (N.D. Ill. 2006) the court rejected an attempt by a bank to bar a consumer from enforcing their rights under the Truth in Lending Act (TILA) based on a purported contractual release.[5] The court stated,

> The only decision the parties cite that comes anywhere near addressing the issue presented here is Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 (11th Cir.1982). In that case, the Eleventh Circuit refused to apply to a car buyer's TILA claim a contractual provision releasing the seller of "any and all claims" arising out of the purchase of the car, concluding that "the policies underlying TILA ... do not permit [the court] to read [a consumer's] TILA rights into the [contract's] boiler plate language [releasing] 'any and all claims.' " Id. at 1182. Were this allowed, the court said, "the public interest in deterring inconsistent and undecipherable lending practices would be greatly hampered." Id. at 1181. As we have indicated, the same would be true were the Court to enforce Wells Fargo's notice and cure requirement and thereby bar Abercrombie's claim.

In sum, the Court has found no authority supporting the enforcement of a

[5] The FCRA was originally enacted in 1970 as an amendment to the TILA.

contractual provision that amounts to a waiver of TILA's initial disclosure requirements. To the contrary, ***"[a] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy."*** *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). As the Court has made clear, contravention of the policy underlying TILA's disclosure requirements is precisely what would occur were we to enforce the notice and cure provision in Wells Fargo's contract. Because "waiver of [the borrower's] statutory rights would defeat the paramount congressional purpose behind" TILA, Alexander v. Gardner-Denver Co., 415 U.S. 36, 51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (regarding a contractual waiver of an employee's rights under Title VII of the Civil Rights Act of 1964), Abercrombie's noncompliance with the notice and cure provision does not entitle Wells Fargo to dismissal of her claim.

***Abercrombie*** at 417 F. Supp. 2d 1008-09 (emphasis added)

**CONCLUSION**

For the reasons set forth herein, the defendant's motion to dismiss the complaint must be denied in its entirety.

Respectfully submitted,

JAMES B. FISHMAN
KEVIN MALLON
Attorneys for the Plaintiff

cc: Bret A. Scher
Kaufman Dolowich Voluck & Gonzo, LLP
Attorneys for the Defendant