FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAWN MASSEY, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

ON-SITE MANAGER, INC.,

Defendant.

**MEMORANDUM DECISION AND ORDER**

11 Civ. 2612 (BMC)

**COGAN**, District Judge.

Before me is defendant's motion to dismiss plaintiff's putative class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. L. § 380 et seq. ("NYFCRA"). The motion is based on a release that plaintiff signed, as part of a rental application, which purported to waive her right to sue defendant under the FCRA or the NYFCRA. Because I find that the release is unenforceable under federal and New York state law, the motion is denied.

## BACKGROUND

Viewing the complaint in the light most favorable to plaintiff, the Court assumes for the purpose of this motion that the following facts are true. In November, 2010, plaintiff applied to rent an apartment from Vantage Management Services ("Vantage"). In connection with this application, Vantage obtained a report from On-Site Services ("On-Site"), a consumer reporting agency that prepares reports about rental applicants and sells them to prospective landlords. In this report, On-Site advised Vantage that plaintiff had been the subject of an eviction proceeding in October, 2002, in which judgment was awarded against her. Vantage rejected plaintiff's

rental application based on this report. Plaintiff now brings suit against On-Site for having violated section 1681c(a)(2) of the FCRA and section 380-j(f)(1)(ii) of the NYFCRA, which provide that "no consumer reporting agency may make any consumer report containing" civil judgments that, "from date of entry, antedate the report by more than seven years." Plaintiff also claims that On-Site lacks reasonable procedures designed to ensure compliance with these statutes, in violation of sections 1681e(a) and 380(k) of the FCRA and NYFCRA, respectively.

On-Site moves to dismiss based upon release language that appeared in a paragraph above plaintiff's signature on her rental application. The paragraph states:

> I understand that in order for Vantage Properties LLC or its affiliates and agents to comply with the provisions of the Fair Credit Reporting Act, I must authorize you to retain a Credit Reporting Agency, who may obtain, prepare and furnish credit reports concerning me, and may obtain and furnish information on my character, general reputation, personal character and mode of living. In connection with my application for this apartment, I authorize all banks, corporations, companies, credit agencies, accountants, landlords, persons and employers, to release any information that they have about me to Vantage Properties LLC, its affiliates or its agents and I release them from any and all liability or responsibility from doing so. Further, I authorize the procurement of an investigative consumer report including, but not limited to, a Criminal Record search and understand that such report may contain information about my background, character and personal reputation. I hereby release the individual, company or institution and all individuals connected therewith from all liability for any damage whatsoever incurred in furnishing such information.

Plaintiff did not have an attorney present when she signed the application. She alleges that the release "was a block of confusing 'legalese' text, in fine print," and that she does not remember how closely she read it. Although she understood the release to "authorize[e] the landlord to obtain information about [her] from credit agencies," plaintiff "did not intend to waive any claims against On-Site." Plaintiff knew she would not be able to apply for (or rent) the apartment unless she signed the application.

Defendant argues that the release language unambiguously bars plaintiff from suing On-Site in connection with the report provided to Vantage, and that New York law therefore requires this Court to enforce the release according to its terms. In response, plaintiff argues that the release is not applicable to her particular claims and that, in any event, the release is unenforceable as a violation of public policy pursuant to New York and federal law.

## DISCUSSION

### A. Standard of Review

When a plaintiff has executed a release provision, dismissal under Rule 12(b)(6) may be warranted for claims encompassed by the release. See, e.g., Gibbs v. Bank of Am. Corp., No. 10-1778, 2011 WL 743224, at *1 (E.D.N.Y. 2011); RBS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F. Supp. 2d 472, 479 (S.D.N.Y. 2007). If a release is valid and applicable to plaintiff's particular claims, dismissal is proper unless the complaint alleges, with sufficient particularity, that plaintiff has a recognized defense to the release. See Interpharm, Inc. v. Wells Fargo Bank, N.A., No. 10-1801, 2011 WL 3768827, at *1 (2d Cir. Aug. 26, 2011). If, however, the release is invalid or does not address plaintiff's particular claims, denial of the motion to dismiss is proper whether or not plaintiff has plead any defenses to the release. On a Rule 12(b)(6) motion, this court accepts the material facts alleged in the complaint as true and draws "all reasonable inferences in plaintiff's favor." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004).

Ordinarily, a Court may not consider materials extraneous to the complaint when deciding a motion to dismiss. See Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000); Fed. R. Civ. P. 12(d). The Second Circuit, however, has recognized several exceptions to this rule. For example, the Court may consider "documents incorporated by reference in the

complaint," Halebian v. Berry, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (internal quotation marks omitted), and documents that are "integral to the plaintiff's claim." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991). Defendant submitted plaintiff's rental application for this Court to consider as part of its motion to dismiss. Because plaintiff's claims are predicated on a consumer report provided in connection with this rental application, the application is "integral" to her claims. Moreover, plaintiff referenced the application in paragraph 32 of her complaint. The rental application is therefore incorporated into the pleadings by reference.

Plaintiff submitted to this Court, along with her opposition to defendant's motion, an affidavit in which she proffered facts supporting her argument that the release is invalid. This Court may consider the affidavit as part of plaintiff's pleadings because it is "integral" to her claims and because the ordinary rule against consideration of extraneous materials operates for the protection of plaintiff and is therefore less pertinent when the material has been submitted by plaintiff. See id. at 48 ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered."). As it is plaintiff herself who asks this Court to consider her extraneous affidavit, "the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Id.; accord Reliance Ins. Co. v. Polyvision Corp. 474 F.3d 54, 57 (2d Cir. 2007) (Finding that district court's consideration of materials extraneous to the complaint was not error "because it is clear from the record [that the plaintiff] knew additional factual considerations were being considered and, in fact, responded with its own evidentiary submissions."). In deciding defendant's motion to dismiss, I will therefore consider the following documents to constitute plaintiff's pleadings: the complaint; the rental application; and plaintiff's affidavit.

**B. Enforceability of the Release**

Plaintiff alleges that On-Site's violation of the FCRA and the NYFCRA was "intentional and willful, or, at the very least, negligent." The New York Court of Appeals has held that a waiver of the right to sue for prospective "willful or grossly negligent acts" is "wholly void." Gross v. Sweet, 49 N.Y.2d 102, 106, 424 N.Y.S.2d 365 (1979). This release is therefore void to the extent it purports to bar plaintiff's claims based on intentional or willful violations of the NYFCRA or the FCRA.[1]

Although New York courts permit prospective waiver of claims based on negligent acts under certain circumstances, "it must appear plainly and precisely [in the contract] that the limitation of liability extends to negligence." Id. at 107. The contract need not include the word "negligence" to satisfy this standard, but New York law requires "words conveying a similar import." Id. at 108. Furthermore, the Gross Court expressly held that the phrase "any and all liability or responsibility," which appears in the instant release, is insufficient to waive claims based on negligence. Id. at 108-09. Because the release at issue does not plainly address claims based on negligence, it is unenforceable to the extent it purports to waive plaintiff's right to sue On-Site for negligent violations of the FCRA or the NYFCRA.

Although the principle expounded in Gross is most often invoked in the context of common law torts, New York courts show a similar skepticism toward releases purporting to waive prospective statutory harm. As early as 1860, New York's highest court held that a law "based upon views of policy and humanity" could not be prospectively waived by parties to a contract, lest "the policy of the law . . . be completely overthrown." Kneettle v. Newcomb, 8 E.P. Smith 249, 1860 WL 7902 (1860). New York courts allow waivers of statutory rights only

[1] The parties both assume that New York law applies to the enforceability of the release. This seems consistent with the analysis required under United States v. Kimbell Foods, Inc., 440 U.S. 715, 728-29, 99 S.Ct. 1448 (1979), and the Court will therefore rely principally on New York law.

when: 1.) such a waiver constituted an "intentional relinquishment of a known right," Meachem v. N.Y. Cent. R.R. Co. 8 N.Y. 2d 293, 299, 206 N.Y.S.2d 569 (1960); and 2.) the waiver would not contravene public policy. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704-705 (1945) ("Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate."), *aff'g* 293 N.Y. 666 (1944).

For a waiver to constitute an "intentional relinquishment of a known right," New York courts require a high degree of mutual assent between the contracting parties. For example, in the context of rights granted to employees under state laws regulating the employer/employee relationship, New York courts will allow prospective waiver only "upon the existence of a bona fide agreement" by which the employee "received a desired benefit in return for the waiver" and the employer demonstrates "the complete absence of duress, coercion or bad faith and the open and knowing nature of the waiver's execution." Am. Broad. Cos. v. Roberts, 61 N.Y.2d 244, 249-50, 474 N.Y.S.2d 370 (1984). The stringency of this standard is demonstrated by the Court of Appeals' rationale in a decision in which the Court permitted a teacher to waive his statutory tenure rights: "[t]he stipulation was reached only after exhaustive discussion among counsel . . . its ramifications were fully explored . . . [and] the hearing officer painstakingly and in no uncertain terms inquired not only into the petitioner's understanding of its precise conditions but also as to his grasp of the nature and extent of the rights he was waiving." Matter of Abramovich v. Bd. of Educ. of Cent. Sch. Dist. No. 1 of Brookhaven and Smithtown, 46 N.Y.2d 450, 457, 414 N.Y.S.2d 109 (1979).

Plaintiff's affidavit states that the release was situated in "a block of confusing 'legalese' text," that she does not remember whether she read it closely, and that she did not understand

that the release purported to waive the kind of claim she now brings. The affidavit also states that plaintiff knew she would be unable to rent the apartment unless she signed the release. Plaintiff signed the waiver automatically, without fully reading or discussing the terms, under the assumption that there was no other way to rent the apartment. The level of mutual understanding between plaintiff and On-Site was therefore insufficient, under New York law, to constitute a valid prospective waiver of plaintiff's statutory rights.

Moreover, enforcement of this release would undermine the intentions of Congress and New York's legislature in enacting the FCRA and the NYFCRA. The FCRA was enacted after Congress's express finding that "consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers . . . [and] [t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). The consumer report that On-Site provided to Vantage compiled information on prior evictions; prior bankruptcies; criminal history; sex offenses; and annual income. This information is extremely private and potentially stigmatizing. Congress passed the FCRA with the express purpose of protecting consumers from consumer reporting agencies that fail to ensure that this kind of information is accurate and up-to-date. If consumer reporting agencies could simply require landlords to include this release in all rental applications, they would become effectively exempt from the statutes' provisions and the protections that the legislature sought to provide consumers would be completely undermined. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. at 704-705.

Finally, it is worth noting that New York courts have been particularly reluctant to enforce prospective waivers contained in leases provided to residential tenants. See, e.g., Estro

Chem. Co. v. Falk, 303 N.Y. 83, 86 (1951) (holding that any prospective waiver of New York's rent-control laws violates public policy); Boyd H. Wood Co. v. Horgan, 291 N.Y. 422, 426 (1943) (holding that a New York law protecting tenants from automatic renewal clauses in written leases could not be prospectively waived because the statute was "prompted by considerations of public policy"). These cases, which involve statutes designed to protect consumers in the housing market, are analogous to the instant case and reinforce my determination that enforcement of the instant release would violate public policy.

## CONCLUSION

Defendant's motion to dismiss is denied.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
September 15, 2011