UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
DAWN MASSEY, individually and on behalf of                  :
all others similarly situated,                              :            **MEMORANDUM**
                                                            :            **DECISION AND ORDER**
                              Plaintiff,                    :
                                                            :            11 Civ. 2612 (BMC)
              - against -                                   :
                                                            :
ON-SITE MANAGER, INC.,                                      :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X

**COGAN,** District Judge.

The Fair Credit Reporting Act, 15 U.S.C. § 1681c(a)(2) ("FCRA"), prohibits a consumer reporting agency from reporting information concerning "[c]ivil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period." Defendant in this case is a consumer reporting agency that prepares credit reports for landlords who are evaluating rental applications. It reported a New York judgment of eviction against plaintiff that was more than seven years old (and beyond New York's six year statute of limitations).

Plaintiff moves for class certification of a class comprised of (1) consumers from every state who had outdated civil actions reported against them; and (2) consumers from the states of Arizona, New York, Pennsylvania, Nevada, and Mississippi who had outdated judgments reported against them. For the reasons set forth below, I find that the class is appropriate for certification and therefore grant the motion, although with slight modifications to the class definition.

## BACKGROUND

Defendant compiles consumer credit reports for landlords to consider in evaluating their prospective tenants' rental applications. Each landlord specifies the criteria that it wishes to use, such as prospective tenants' financial status and litigation history. Defendant then evaluates the data it receives about the tenant according to those criteria and provides a report to the landlord. Defendant generates an average of 60,000 reports per month for these landlords. These reports contain a recommendation for the landlord concerning the tenant, including "decline," "approve," "approve with conditions," and "maybe."

Since 2009, defendant has obtained information about prospective tenants' housing court histories pursuant to contracts with LexisNexis. Defendant has undertaken efforts to limit reported housing court records to those less than seven years old, both in its communications with LexisNexis and in its own review of the supplied data. Defendant concedes that, in January 2011, it became aware of a software flaw that allowed it to report housing court records more than seven years old. It claims to have fixed the problem by August 2011.

Defendant ultimately issued over 8,000 reports containing outdated information under FCRA.[1] However, defendant asserts that a maximum of 95 consumers within this group actually may have had their rental applications rejected because of the outdated court judgments. This is because, according to defendant, those consumers' reports are the only subset of the 8,000 erroneous reports in which each report: (1) contained a "decline" recommendation from

---

[1] Defendant admits that it issued reports containing outdated judgments for 3,277 individuals. Additionally, plaintiff represents that defendant acknowledged issuing over 5,000 reports containing information about outdated civil actions. Defendant does not contest this figure.

2

defendant; (2) actually resulted in the landlord's rejection of the consumer's application;[2] ; and (3) but for the obsolete information, would not have received a "decline" recommendation.

Plaintiff was sued in a summary holdover eviction proceeding in New York Civil Court in 2002. Plaintiff did not know she had been sued because she had already moved out of the apartment at the time the suit was commenced and service was effected by "nail and mail" to and at the apartment. See N.Y. C.P.L.R. § 308(4). On October 31, 2002, the court entered a default judgment against plaintiff, awarding the landlord possession of the apartment but declining to award money damages. Plaintiff never received notice of the judgment.

Over eight years later, in November 2010, plaintiff applied to rent an apartment in Queens from Vantage Management Services, a landlord customer of defendant. The report that defendant provided to Vantage included information about the 2002 eviction proceeding and recommended that plaintiff's application be denied. Vantage rejected the application, advising plaintiff that the rejection was based in whole or in part on the report obtained from defendant.

Plaintiff approached defendant to obtain a retraction of the obsolete data. When defendant refused, plaintiff commenced this class action. The class that she seeks to certify consists of:

> All persons who were the subject of a consumer report, prepared within two years of the initiation of this action, which included either: a) records of a civil court action filed anywhere in the country which did not result in a judgment which predated the report by more than seven years; or b) a possessory judgment arising from a judicial eviction proceeding which predated such report by more than seven years where the judgment was issued in Arizona, New York, Pennsylvania, Nevada, or Mississippi.[3]

---

[2] Landlords sometimes accept rental applications despite "decline" recommendations in defendant's reports.
[3] Plaintiff initially sought to include Georgia and Delaware consumers in the class, but, after defendant pointed out that Georgia has no statute of limitations for non-monetary judgments and Delaware has no statute of limitations for any judgments, plaintiff modified the scope of the proposed class to exclude consumers from those states.

3

On behalf of the class, plaintiff seeks FCRA statutory damages of between $100 and $1,000 per violation. See 15 U.S.C. § 1681n(a)(1)(A).

## DISCUSSION

### I.   Standard for Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure requires that any proposed class action: "(1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). Courts commonly use a shorthand summary to describe these requirements, referring to the four prongs simply as "numerosity," "commonality," "typicality," and "adequacy." See, e.g., Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364, 2370-71 (1982).

Regardless of whether class certification is contested, a court may not certify a putative class unless it has performed a "rigorous analysis" and determined that each of Rule 23's requirements has been met. Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2551 (2011); Falcon, 457 U.S. at 161, 102 S. Ct. at 2372. As part of this analysis, the court must assess all relevant evidence admitted at the class certification stage and resolve any relevant factual disputes, even if this requires a determination of issues that go to the merits of the case. See In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41-42 (2d Cir. 2006). The party moving for class certification "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers, 624 F.3d at 547; accord Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008). Despite this Court's obligation to carefully analyze each prong of Rule 23 before granting class

certification, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction'" and has shown a "'general preference'" for granting rather than denying class certification. Gortat v. Capala Bros., 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (quoting Marisol A. *ex rel.* Forbes v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997), and Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

In addition to satisfying each of the four prerequisites listed in Rule 23(a), a party seeking class certification must demonstrate that the class can be maintained under one of the subsections of Rule 23(b). Plaintiff seeks to certify the class pursuant to Rule 23(b)(3) and must therefore show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

## II. Application

There is sufficient proof that the proposed class satisfies all of Rule 23's requirements. First, defendant effectively admits that numerosity is present here, for even under its view of the law, there are still 95 class members who may have been denied a lease because of the reporting of obsolete information. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (presuming numerosity is satisfied where a class contains 40 or more members). Second, the presence of commonality appears obvious since, as defendant concedes, it reported outdated information as a result of a centralized flaw in its software system and this flaw affected all of the reports it created about the class members during the relevant time period. See Marisol A., 126 F.3d at 376 ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); see also Wal-Mart, 131 S. Ct. at 2551 (requiring, for commonality purposes, the class to be based on a "common contention" which, in turn, "must be

5

of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Third, plaintiff has demonstrated that she is typical of the class. Defendant issued a report about her that illegally contained outdated information as a result of the flaw in defendant's system, just as it did, by definition, for every class member. See Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) ("[The] typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."). Finally, with regard to adequacy, plaintiff has demonstrated that she has actively participated in the litigation of this case and that her counsel, having previously litigated a FCRA class action, is sufficiently qualified to represent the class. See Marisol A., 126 F.3d at 378 ("[Adequacy] requires that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation . . . [and] that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class.") (internal citations and quotation marks omitted). Defendant has not suggested that plaintiff's interests are antagonistic to those of the other class members or otherwise challenged her adequacy.

With regard to Rule 23(b)(3)'s predominance requirement, the Second Circuit has held that this requirement is satisfied "if resolution of some of the legal or factual issues that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547 (internal citation and quotation marks omitted). Here, the central issues of whether defendant issued reports containing obsolete information about members of the class and whether it did so willfully can be proved on a generalized basis

6

through records and testimony from defendant. Indeed, the parties have already identified over 8,000 instances in which reports containing outdated information were issued.

Rule 23(b)(3)'s superiority requirement is satisfied for the same reasons. As the evidence before the Court demonstrates, through the class action mechanism this Court and the parties can resolve thousands of claims, which would otherwise have to be brought on their own or not brought at all, using generalized and readily available proof. See Rodolico v. Unisys Corp., 199 F.R.D. 468, 479-80 (E.D.N.Y. 2001) ("Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served, namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.").

Defendant opposes class certification primarily by asserting a variety of technical points to argue that plaintiff has failed to satisfy the related requirements of commonality, typicality, predominance, and superiority. In evaluating defendant's arguments, I consider these criteria jointly. I conclude that none of defendant's arguments are sufficient to erode the clear entitlement to class certification that plaintiff has demonstrated.

### A. Monetary v. Possessory Judgments

Defendant first attacks that portion of the proposed class which encompasses consumers whose reports contained outdated judgments. Defendant focuses on the proposed class definition's reference to "possessory" judgments and argues that this definition excludes consumers injured because of outdated "monetary" judgments. This distinction, defendant asserts, creates individual issues that defeat commonality and typicality as some of the class members with reported outdated judgments reports may have "monetary" judgments, while others may have "possessory" judgments, and others may have judgments containing both types

7

of relief. Further, determining whether a judgment is "possessory" or "monetary" will require an individualized inspection of each class member's claim, which would defeat predominance.

Plaintiff has mooted this point in reply. It has refined its class definition to delete the word "possessory," so that this portion of the class will now include those consumers with reported outdated judgments, whether "monetary," "possessory," or both. Plaintiff's solution is fully consistent with FCRA, which does not distinguish between judgments based on the relief awarded. See 15 U.S.C. § 1681c(a)(2). So long as the judgment is older than seven years, then, as to the states included in plaintiff's class, it must not be reported.[4] With plaintiff's modification, all of the class members are now the same and there is no need for an individualized determination of the kinds of judgments that were reported.

The only exception to this, and the only potential problem as to commonality, typicality, and predominance, is the inclusion of New York judgment debtors (including plaintiff) in the class. The law seems clear that, as to New York, unlike the other states included within the class, monetary judgments are good for 20 years, see N.Y. C.P.L.R. 211(b), whereas possessory judgments are good for six years. See N.Y. C.P.L.R. 213(1). There appears to be no law as to whether a New York judgment that both awards possession and damages for unpaid rent falls within the latter or the former category, but assuming that at least the monetary portion of such a combined judgment would be enforceable for 20 years, then the judgment could be properly reported under FCRA.

Plaintiff essentially raises an estoppel argument, asserting that since defendant reported such judgments under a report heading entitled "evictions," all of these judgments must be

---

[4] That is because plaintiff has restricted this portion of the class to consumers with judgments in states that impose a statute of limitations of seven years or less on actions on a judgment. See Ariz. Rev. Stat. Ann. §12-1551(B); Miss. Code Ann. § 15-1-43; Nev. Rev. Stat. Ann. § 11.190(1)(a); 42 Pa. Cons. Stat. Ann. § 5525(a)(5).

presumed to be possessory. However, the elements for an estoppel are utterly absent here, see Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 725 (2d Cir. 2001), and, more importantly, FCRA allows the reporting of such New York monetary or monetary-component judgments for up to 20 years, regardless of the heading in the report under which they appear. I therefore agree with defendant that this distinction precludes certification of a class that includes New York judgment debtors whose reported judgment is between seven and 20 years old and is either for money damages only or includes a monetary award in addition to its possessory decree.

Nevertheless, the modification of the class definition to exclude these New York judgment debtors does not defeat plaintiff's ability to satisfy the criteria under Rule 23(a) or (b). The law is clear that when the determination of class membership can be easily made based on the review of readily available information, class certification is appropriate. See In re Nassau Cnty. Strip Search Case, 461 F.3d 219, 229 (2d Cir. 2006); In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 142 (2d Cir. 2001). Here, the parties have identified 585 potential New York judgment debtor class members. Defendant has already reviewed approximately 80 of the reports for these members and has found that 28 of them include monetary judgments. As defendant's review demonstrates, the information necessary to determine which New York judgment debtors must be excluded from the class is readily accessible in database form. Therefore, it should be easy for the parties to determine the exact number of the 585 New Yorkers who have monetary awards as part of their seven to 20 year old judgments. I will exclude such New York judgment debtors from the class definition, and having done so, there is no longer an issue as to commonality or typicality with regard to the type of judgment against each class member.

### B. The Possibility of Renewal

Many states allow for renewal of judgments. See generally 46 Am. Jur. 2d Judgments §§ 391, 420. Defendant contends that, at least with regard to Arizona and Mississippi class members, the possibility of renewal requires an individualized inquiry into whether each class member has had the judgment against her renewed. As a result, defendant asserts, plaintiff's claim may not be typical of the class, and common issues, i.e., the determination as to whether each class member is subject to a renewed judgment that could be legitimately reported, do not predominate over individual issues.

Defendant presents a possible scenario but both common sense and the record before me require its rejection. The class is not composed of judgment debtors who are Fortune 500 companies. The members are individual consumers who rent their apartments, few if any of whom are going to be in "the 1%." If a judgment creditor cannot get possession of his real estate or satisfaction of a judgment against a renter for seven years, the odds are overwhelming that it will conclude that it is not worth the legal fees to renew the judgment, even in those states where such renewal does not require extensive effort; some lawyer still has to be paid to make a court filing and the judgment creditor probably has to pay a filing fee. Plaintiff has produced evidence that supports this conclusion; she has reviewed about 100 outdated Arizona judgments containing a monetary component and none have been renewed. Defendant has similarly reviewed 189 Arizona judgments and has not disclosed that any were renewed after their statute of limitations expired.

Moreover, as was the case with New York monetary judgment debtors, determining whether a judgment has been renewed is a straightforward paper exercise that will not require a lot of time on anybody's part. If there are any class members whose judgments were renewed

10

and thus legitimately reported, they can be excluded.[5] Although it is plaintiff's burden to prove that the criteria for class certification have been met, see Myers, 624 F.3d at 547, plaintiff has offered sufficient evidence with regard to this issue, and defendant has offered to nothing to suggest that the existence of renewed judgments is anything more than theoretical. See Cross v. 21st Century Holding Co., No. 00-CV-4333, 2004 WL 307306, at *3 (S.D.N.Y. Feb. 18, 2004) (rejecting a challenge to typicality based on a possible unique defense where that defense was "speculative" and defendants failed to demonstrate that the "potential defense, if available, will divert attention from the prevailing, common issues"); cf. In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 513-15 (S.D.N.Y. 1996) (rejecting "hypothetical" and "potential" conflicts between class members as insufficiently "palpable" to defeat a finding of adequacy).

### C. Materiality

Defendant also asserts that common issues do not predominate by pointing to the difference between the 95 class members who may have been injured by the misreported information, because it was the sole basis for the rejection of their rental applications, and the vast majority of class members who were allowed to rent the apartment for which they applied despite the misreported information. These latter class members were not injured solely by defendant's reporting of outdated information either because (1) defendant recommended approving their application, (2) the landlord disregarded defendant's recommendation, (3) the applicants withdrew their applications, or (4) the application would have received a "denial" recommendation even without the misreported information. Defendant claims that plaintiff falls within this last group, because even if it had not reported the outdated information, plaintiff's

---

[5] Therefore, the certification of this class will in no way impair defendant's ability "to litigate its statutory defenses to individual claims." Wal-Mart, 131 S. Ct. at 2561.

income level would still have required a "decline" recommendation.[6] These various distinctions, defendant contends, make plaintiff's claim atypical, and introduce numerous disparate issues that defeat commonality and predominance. To support its argument, defendant relies on cases in which courts have rejected claims for false representations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e ("FDCPA"), where the allegedly false representation was found to be immaterial. See, e.g., Lane v. Fein, Such and Crane, LLP, 767 F. Supp.2d 382 (E.D.N.Y. 2011); Hasbrouck v. Arrow Fin. Servs., No. 09–CV–748, 2011 WL 1899250 (N.D.N.Y. May 19, 2011). Defendant contends that determining materiality here will require an examination of the circumstances of each class member in order to ascertain whether she would have received an "approved" recommendation and actually rented the apartment absent the improperly reported judgment.

Defendant's reliance on cases applying a materiality requirement to FDCPA §1692e claims is misplaced. Those cases address the provisions of FDCPA §1692e that prohibit false representations. In other words, they address the anti-fraud provisions of FDCPA §1692e. Materiality is almost always a required element in proving a fraud. See Hahn v. Triumph P'ships, 557 F.3d 755, 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement."). But FDCPA §1692e also contains other provisions that do not require a showing of materiality. For example, FDCPA §1692e(11) mandates that debt collectors disclose in the initial communication with a consumer that they are attempting to collect a debt. The failure to give the required disclosure is actionable *per se*, without any requirement of materiality. Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 374 (4th Cir. 2012) ("whether a materiality requirement attaches to other violations of §1692e has no

---

[6] Plaintiff disputes this point, alleging that she was participating in a rent subsidy program and, thus, would have qualified for the apartment but for defendant's reporting of the outdated judgment.

12

impact on [plaintiff's] allegations that the defendants violated §1692e(11)."). Statutory damages are available for every consumer who has suffered a violation of FDCPA §1692e(11), regardless of whether they were actually injured or not. See 15 U.S.C. § 1692k(a)(2)(A).

Although there is no case law expressly considering defendant's argument under FCRA, my conclusion is that FCRA § 1681c(a)(2) is more properly analogous to FDCPA §1692e(11) than it is to FDCPA's anti-fraud provisions. FCRA § 1681c(a)(2) is not an anti-fraud statute. It is a regulatory and coercive statute. It is a flat-out prohibition against doing exactly what the defendant did here. A consumer whose report contains an outdated judgment but who nevertheless obtains her desired apartment is just as entitled to recover statutory damages as a consumer whose outdated judgment precluded her from getting her desired apartment. Although it could be argued that Congress should have differentiated between these two situations, that is an argument for Congress to consider, not the courts, as nothing in the statute suggests that distinction.

Materiality is therefore not an issue, and not an impediment to class certification.

### D. The accrual date for actions not ending in a judgment under FCRA

FCRA § 1681c(a)(2) is reasonably clear in its application to reporting judgments: judgments older than seven years or the applicable statute of limitations, whichever is longer, must not be reported. However, the statute also prohibits the reporting of civil actions more than seven years old that do not end in a judgment, and it is unclear when the seven year period begins to run as to such actions.

Plaintiff contends that Congress implicitly intended that actions that had been commenced more than seven years prior to the issuance of the consumer report must not be

reported. Plaintiff recognizes that under this interpretation it would be possible that a reported action, commenced eight years prior to the report date, might still be pending or have ended shortly before the report date, but plaintiff views this as a remote possibility given the lengthy seven year period and the relatively short lifespan of housing court litigation. The problem with plaintiff's argument is that FCRA is not limited to housing court litigation; it applies to all civil lawsuits without distinction. Nevertheless, plaintiff's position has the advantage of uniformity and thereby militates in favor of the commonality and predominance factors in determining the propriety of class certification.

Plaintiff, however, has undercut her own position by relying heavily on the Federal Trade Commission's Official Staff Commentary on this issue. That commentary states:

> 1. Operative Date. For a suit, the term "date of entry" means the date the suit was initiated. A protracted suit may be reported for more than seven years from the date it was entered, if the governing statute of limitations has not expired. For a judgment, the term date of entry means the date the judgment was entered.

Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18804, 18818 (May 4, 1990). Defendant asks me to disregard this comment as inconsistent with Congressional intent, because if Congress had meant to use "date of filing" with regard to lawsuits, it would have said so. I find both parties' treatment of the comment rather ironic, because, while the first sentence of the comment assists plaintiff's position, the second sentence introduces additional ambiguity that might well defeat commonality and predominance.

There are two problems with the second sentence of the comment. First, it does not define what it considers to be "a protracted suit." Second, there is no such thing as a "governing statute of limitations" for a suit that is timely commenced. A timely commenced suit is not "governed" by a statute of limitations; rather, the statute of limitations has by definition been

satisfied and therefore simply does not apply. If what the FTC meant was that a "protracted suit," whatever that means, may be reported under a scenario where, if that suit were dismissed, a new suit on the same claim would be timely under the applicable statute of limitations, that is a rather tortured construction of the statute. There is nothing in the statute to suggest that Congress had in mind a hypothetical, duplicative second suit in determining which suits could and could not be reported. Moreover, the comment would fail to account for the Jarndyce v. Jarndyce scenario, in which litigants are engaged in a battle to the death for decades, long after any new action on the same claim would be barred by any applicable statute of limitations; yet it is precisely that kind of case that might be of most interest to a potential creditor. Finally, and perhaps most importantly for our purposes, determining the reportability of "protracted" claims based on the statute of limitations applicable to a hypothetical second duplicative lawsuit might well require the kind of individualized inquiry that would defeat commonality, typicality, and superiority. It might require, for example, inquiry into state laws that provide for the tolling of a statute of limitations based on the pendency of a prior action. See, e.g., N.Y. C.P.L.R. § 205(a) (permitting six month toll of statute of limitations where an earlier case was dismissed except on certain specified grounds).

Although I am required to give due deference to the FTC comment, I am not required to accept it as a binding interpretation of the law. See Beggs v. Rossi, 145 F.3d 511, 512 (2d Cir. 1998). See also United States v. Mead Corp., 533 U.S. 218, 221, 121 S. Ct. 2164, 2168 (2001). Stated otherwise, I am permitted to disregard it the FTC's commentary if I think it is clearly wrong. And with regard to the second sentence of the comment, I do.

The statute's qualifier "date of entry" cannot apply to lawsuits not resulting in judgments, because that phrase is commonly used to apply only to orders and judgments. No experienced

lawyer or judge would refer to the date on which an action is commenced as the "date of entry;" rather, they would refer to that date as the date on which an action is commenced or filed. Civil actions have a commencement date, but not a "date of entry." Similarly, the statute's reference to "the governing statute of limitations" has no application to civil actions that do not end in a judgment because the statute of limitations is irrelevant to such actions. Both qualifiers, the "date of entry" and "the governing statute of limitations," relate only to the reporting of judgments, and the courts are left to divine congressional intent as to when "civil actions" not resulting in judgments begin to age for FCRA purposes.

To ascertain Congressional intent with regard to the reporting of civil suits not ending in judgments, defendant looks analogously to the preceding subsection of FCRA which governs the reporting of consumer bankruptcy filings. Section 1681c(a)(1) prohibits a credit reporting agency from reporting bankruptcy cases "that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years." Defendant suggests that because multiple events in a bankruptcy case can trigger the order for relief, Congress did not intend the filing date of a bankruptcy case to be the "trigger date" for FCRA reporting purposes. According to defendant, if Congress had intended that, it would have simply identified the filing date as the relevant date.

I think defendant has found the proper analogy, but it has drawn the wrong conclusion from it. Section 1681c(a)(1) does, in fact, fix the earliest possible date that a debtor is in bankruptcy as the accrual date for FCRA reporting purposes. The subsection addresses both forms of bankruptcy: voluntary and involuntary. As to a voluntary bankruptcy, the law is clear that the order of relief is entered on the day the bankruptcy petition is filed. See 11 U.S.C. § 301(b) ("[t]he commencement of a voluntary case under a chapter of this title constitutes an

16

order for relief under such chapter."). There thus can be no earlier reporting date. With involuntary bankruptcies, however, it is not clear that a debtor belongs in bankruptcy unless and until the bankruptcy court so determines – that is, until it "adjudicates" the involuntary bankruptcy petition. Defendant's counter-argument, that if Congress had meant the petition filing date it would have said so, does not account for the difference between voluntary and involuntary petitions. Thus, what we can draw from this is that, whether a debtor is in voluntary or involuntary bankruptcy, the date Congress intended to use for FCRA reporting purposes is the earliest possible date on which it is clear that the debtor is properly in bankruptcy.

Carrying forward this "earliest possible date" approach as a manifestation of Congressional intent from §1681c(a)(1) to §1681c(a)(2) requires resolution of this issue in plaintiff's favor, despite the fact that doing so may pick up some litigation of more recent vintage. There is no indication that Congress was thinking of multiple dates for accruing the reporting date of civil actions, and the commencement date of such actions is readily determinable in almost any case. Although the statute could clearly have been better drafted, the commencement date for the action is the only date consistent with Congress' intent as expressed in §1681c(a)(1).

Accordingly, since the date of commencement of lawsuits against class members is readily ascertainable, there is no issue presented as to commonality, typicality, or superiority.

### E. Manageability and Superiority

Finally, defendant contends that certifying plaintiff's class would be unmanageable and inflict harm on it that is out of proportion to the harm suffered by class members. This is not a

17

serious argument.[7] As noted above, this is essentially a paper case; the paper has already been collected and analyzed in substantial part. The fact issues are limited, if they exist at all. The matter may be subject to resolution on summary judgment; if it is not, defendant has described no issues that would require a protracted trial. Clearly, relegating these claims to a single action is highly preferable to requiring every class member to find counsel and bring their own action. That might enable defendant to severely limit its liability, but that of course is irrelevant to a finding of superiority. See In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 145.

## CONCLUSION

I therefore find that plaintiff has satisfied each of the requirements of Rule 23(a) and 23(b)(3). Plaintiff's motion for class certification is granted as modified. The Court certifies the

---

[7] Defendant cites Spikings v. Cost Plus, Inc., No. 06-CV-8125, 2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 29, 2007), in support of its argument that class certification should be denied where the defendant's potential liability is potentially devastating and out of proportion to the harm suffered by the class. The Spikings court's reasoning has been rejected by the Ninth Circuit and the Seventh Circuit in cases involving the exact same damages provision at issue here. See Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 721 (9th Cir. 2010) (holding that "the district court abused its discretion in considering the proportionality of the potential liability to the actual harm alleged in its Rule 23(b)(3) superiority analysis"); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953-54 (7th Cir. 2006) (holding that the district court's denial of class certification because of its belief that "technical" violations of the FCRA should not give rise to billions of dollars in potential liability was inappropriate and vacating the district court's decision).

following class:

> All persons who were the subject of a consumer report, prepared within two years of the initiation of this action, which included either: a) records of a civil court action filed anywhere in the country which did not result in a judgment and which was commenced more than seven years prior to the report; or b) a judgment arising from a judicial eviction proceeding which predated such report by more than seven years where the judgment was issued in Arizona, Pennsylvania, Nevada, or Mississippi and has not been renewed; or c) a New York judgment arising from a judicial eviction proceeding, which contained no monetary award and predated the report by more than seven years.

**SO ORDERED.**

s/ BMC<br>U.S.D.J.

Dated: Brooklyn, New York
       August 23, 2012