UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x
                                     :   **Case No.:**

DAWN MASSEY,                       **11-cv-02612 (BMC)**
on behalf of herself and all others
similarly situated                      :

                         Plaintiff,       :

                - against -             :

ON-SITE MANAGER, INC.,            :

                     Defendant.     :

--------------------------------------------------------------- x

## MEMORNANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT

FISHMAN & MALLON, LLP
James B. Fishman
Kevin C. Mallon
Attorneys for the Plaintiff
305 Broadway, Suite 900
New York, NY 10007
(212) 897-5840

# TABLE OF CONTENTS

I. **STATEMENT OF FACTS**............................................................ 1

A. Background of this Litigation........................................................ 1

B. Litigation of the Case................................................................ 1

C. The Settlement Process.............................................................. 2

D. The Settlement Agreement and Reaction
   To the Class Notice................................................................ 3


II. **ARGUMENT**..................................................................... 5

  A. The Proposed Settlement is Fair, Reasonable, And Adequate,
   and Should Be Approved in All Respects.............................. 5

1) Procedural Fairness Consideration Support Approving
   This Class Action Settlement................................................ 5

2) The Second Circuit's Standard for Examining Substantive
   Fairness of Class Action Settlements Favors Granting
   Final Approval.................................................................... 6

    i) Litigation Through Trial Would be Complex, Costly
   And Long (*Grinell* Factor 1)........................................ 7

    ii) The Reaction of the Class Has Been Positive
   (*Grinell* Factor 2)....................................................... 8

    iii) Discovery Has Advanced Far Enough to Allow the
   Parties to Responsibly Resolve the Case
   (*Grinell* Factor 3)....................................................... 8

    iv) Plaintiffs Would Face Real Risks of Establishing
   Liability and Damages of the Case Proceeded
   (*Grinell* Factors 4 and 5)............................................. 9

    v) Obtaining and Maintaining a Class Through Trial
   Would Be Difficult (*Grinell* Factor 6)....................... 10

    vi) The Total Settlement Amount is Substantial, Even
   In Light of the Best Possible Recovery and Attendant

Risks of Litigation (*Grinnell* Factors 7, 8 and 9)........... 10

B.   Class Counsel is Entitled to a Reasonable Fee of Just Under
     Twenty-Seven Percent from the Total Settlement Amount ... 12
     1)   The Percentage Method is the Preferred Method in the
          Second Circuit for Awarding Attorneys' Fees in a
          Common Fund Case............................................ 13
     2)   A Review of the Relevant Factors Supports Class
          Counsel's Fee Application.................................... 16
          i)   Class Counsel's Time and Labor.................... 16
          ii)  Magnitude and Complexity of the Litigation................ 17
          iii) Risks of Litigation......................................... 18
          iv)  Quality of Representation............................. 19
          v)   Fee in Relation to the Settlement................... 19
          vi)  Public Policy Considerations......................... 21
C.   The Lodestar Cross Check Further Supports An Award
     To Class Counsel of $405,000 From the Total Settlement
     Amount....................................................... 22
D.   An Incentive Payment to the Named Plaintiff Should
     Be Approved................................................ 23

III.   **CONCLUSION**.................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES:**

*Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany,*
493 F.3d 110, 111-12 (2d Cir.2007)…………………………………………………  15

*Aros v. United Rentals Inc.*, 2012 US Dist. LEXIS 104429, * 14 (D. CT 2012)…..  20

*Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992)…….  10

*Clark v. Ecolab*, No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 76613, at * 27
(S.D.N.Y. May 11, 2010)……………………………………………………………  13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)…………………… *passim*

*DeMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010
U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010)……………………….. 12

*Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968)………………………  21

*Dupler v. Costco Wholesale Corp.*, 705F. Supp. 2d 231, 238 (E.D.N.Y. 2010)… *passim*

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005)………….. *passim*

*Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ 3452, 2008 U.S. Dist.
LEXIS 23016,  (S.D.N.Y. Mar. 24, 2008.)…………………………………………  5, 11

*Godshall v. Franklin Mint Co.*, 2004 WL 2745890, (E.D. Pa. Dec. 1, 2004)…….. 24

*Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000)……………. *passim*

*In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001)… 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575,
2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006)…………………  14

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174
(S.D.N.Y. 2000)……………………………………………………………………..  *passim*

*In re BankAmerica Corp. SecuritiesLitig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).. 6

*In re Boesky*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995)……………………………  22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
2007 U.S. Dist. LEXIS 57918, at *129 (S.D.N.Y. July 27, 2007)………………  6

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689,
2003 U.S. Dist. LEXIS 17090, (S.D.N.Y. 2003)…………………………………  19

*In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663.  22

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)…. 24

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 473………………  23

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D.104, 126 (S.D.N.Y. 1997)…….  9

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996)..17

*In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905,

1992 U.S. Dist. LEXIS 12702, at **19-22, (S.D.N.Y. Aug. 24,1992)……………. 23

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999)……….. *passim*

*In re Warnaco Group, Inc. Sec. Litig.*, No. 00 Civ. 6266,

2004 U.S. Dist. LEXIS 13126, at *6 (S.D.N.Y. July 13, 2004)…………………… 20

*J.I.Case Co. v. Borak*, 377 U.S. 426, 43 3-34 (1964)……………………………..  21

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)…………………………. 12

*Karpus v. Borelli (In re Interpublic Sec. Litig.*), No. 03 Civ. 1194,

 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004)………………… 15

*Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, (S.D.N.Y. 2002)……   8, 20

*Masters v. Wilhelmina Model Agency*, (2nd Cir. 2007) 473 F.3d 423, 436-37……. 20

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)………………………………. 11

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982)…… 11

*Rabin v. Concord Assets Group, Inc.,* No. 89 Civ. 6130, 1991

U.S. Dist. LEXIS 18273, (S.D.N.Y. Dec. 19, 1991)……………………………... 23

*Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)…………………..  15

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993)……………. 14

*Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144,

(S.D.N.Y. Jan. 31, 2007)…………………………………………………………  19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) ….   *Passim*

**STATUTES:**

FRCP  12(b)(6)......................................................................... 1

FRCP 23(d)(2)......................................................................... 1

FRCP 23(e)............................................................................. 1, 5

FRCP 30b(6)........................................................................... 8

15 U.S.C. § 1681a(d)................................................................ 2

15 U.S.C. § 1681a(f)................................................................ 2

15 USC 1681c(a)(2) ................................................................ 1

15 USC §§ 1681n(a)(1) and (2).................................................. 10

Plaintiffs respectfully submit this memorandum in support their motion for an order granting final approval of the proposed Settlement of this litigation, pursuant to Federal Rules of Civil Procedure 23(e), awarding attorneys' fees and costs pursuant to FRCP 23(d)(2), awarding an incentive payment to the Class Representative, and providing for the Relief detailed in the Proposed Order for Final Approval of the Settlement, together with any other relief that this Court finds to be just, proper and equitable.

Specifically, Plaintiffs and Class Counsel seek:

(1) Final Approval of the Settlement;

(2) An award of attorney's fees and costs in the amount of $405,000;

(3) Incentive payment to Class Representative Dawn Massey of $15,000.

## I.  STATEMENT OF FACTS

### A. <u>Background of this Litigation</u>.

The plaintiff brought this action on June 1, 2011 alleging that defendant, a consumer reporting agency, had a practice of reporting housing court records which pre-dated the consumer reports it issued by more than seven years.  Plaintiff alleged that by engaging in this conduct the defendant willfully violated 15 U.S.C. § 1681c(a)(2) of the Fair Credit Reporting Act, ("FCRA") (15 U.S.C. § 1681 *et seq*.).  In response, Defendant acknowledged that such reports were issued but argued that it was not its policy to issue reports containing such information and denied any legal liability under the FCRA.

### B. <u>Litigation of the Case</u>

Following the commencement of this action the parties held an initial conference with the Court on August 1, 2011.  Thereafter the parties engaged in motion practice and discovery. On August 5, 2011 defendant moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the

complaint on the grounds that plaintiff signed a waiver releasing defendant from all liability for any violation of the Fair Credit Reporting Act.  On September 15, 2011, after receiving briefing from the parties, the Court issued a written order denying defendant's motion in its entirety.

Following service of Defendant's answer, the parties commenced discovery, including five depositions of party witnesses.  The parties also proffered and responded to extensive interrogatories, and defendant produced, and plaintiff's counsel reviewed, over 38,000 pages of documents and computer records.

On February 1, 2012, plaintiff moved for class certification pursuant to Fed. R. Civ. P. 23.  Defendant filed its opposition to the motion on February 17, 2012 and plaintiff filed a reply brief and supporting documents on March 2, 2012.  On June 24, 2012 the Court issued an Interim Order requiring further briefing on the motion for class certification.  Both parties filed additional briefs on July 2, 2012 and replies on July 5, 2012.  On August 24, 2012, the Court issued an order granting plaintiff's motion for class certification with some minor alterations to the requested class definition.

On September 4, 2012 defendant filed a request for a pre-motion conference for its proposed Motion for Summary Judgment.  The Court held a hearing on September 20, 2012 on the defendant's pre-motion conference and the parties also submitted a preliminary proposed joint pre-trial Order at that time.

## C. The Settlement  Process

Immediately after the September 20, 2012 pre-motion conference with the Court the parties met with Magistrate Judge Marilyn Go for a settlement conference.  The parties negotiated until after 8 p.m. that evening and were able to make progress on a potential

settlement but ultimately were unable to resolve the case at that time.  The parties and Judge

Go believed an additional conference would be productive and it took place on September 24,

2012.  The parties were able to come to an agreement in principal at that time.  Mallon Decl. ¶ 6.

However,  upon reaching an agreement in principal, additional issues remained

unresolved, primarily involving the defendant's demand that class members be required to

submit a claim form to receive compensation from the settlement and issues relating to a sub-

class of consumers where only a "summary report" was issued which did not specifically

contain any obsolete information, but in some (but not all) cases referenced the existence of

obsolete information (hereinafter the "sub-class").  Those issues were ultimately resolved and

the parties reached the proposed agreement described below.

### D. <u>The Settlement Agreement and Reaction to the Class Notice</u>

The proposed Settlement provided for payment of $150 to each of the 7,259 class

members and an incentive award to the named plaintiff of $15,000.  See Declaration of Kevin

Mallon, ¶ 11, Exh. D.  The total class compensation available - exclusive of costs and

attorney's fees - was thus $1,104,150.00 (One Million One Hundred Four Thousand and One

Hundred Fifty Dollars).   Class members were identified from Defendant's records and were

provided with direct mail notice with an opportunity to "opt out" of the class.

Only members of the sub-class, or those who need to be reached via "skip tracing" (i.e.

using private databases to locate class members when the class notice is returned as undeliverable)

were required to mail in a claim form to obtain their $150 recovery.  A claim form was used for the

sub-class because it was not clear that each member of the sub-class would otherwise meet the class

definition as defined by the Court since no obsolete information was directly provided on the

"summary reports" issued on their behalf.  Class members reached via a "skip trace" were required

to file a claim form because of the risk that notice was mailed to the wrong person.  Members of the class not belonging to the sub-class were not required to provide a claim form in order to obtain a recovery from the settlement – a check will be sent to them unless they opt out of the class. The remainder of any unclaimed funds will revert back to the defendant under the terms of the settlement agreement.  Defendant further agrees to pay all costs associated with administering the settlement, which the parties estimate will cost approximately $30,000.

Finally, the Settlement provides that defendant will pay up to $405,000 in attorney's fees and costs, which represents less than 27% of the total settlement amount, exclusive of administrative costs. This sum is not drawn from the class fund but is instead above and beyond the class fund.  Plaintiff's counsel's lodestar calculation, as of the date of filing this motion, is over $232,000, and thus the proposed and agreed fees represent a multiplier of approximately 1.75 times the lodestar, not inclusive of additional fees which Class Counsel will be required to expend in enforcing this proposed settlement.

The main class has 5,662 members.  Affidavit of Baily Hughes, ¶ 6.  Direct notice was attempted to be mailed to each of these class members.  The defendant provided the Class Administrator with the name and last known address of each of the class members.  Prior to mailing notice, the Class the Administrator processed the list through the Coding Accuracy Support System (CASS) and the NCOA (Nation Change of Address) update process of the U.S. Postal Service.  Hughes Decl. ¶ 4After this process mailings sent to 2,560 members of the primary class were unable to be reached.  Hughes Decl. ¶ 11.  Of the 1,597 members of the "sub-class," 639 class members were unable to be reached.  Hughes Decl. ¶ 14.

As of the date of the filing of this motion, 39 claim forms had been properly executed and returned, one class member had opted out of the class, and there have not been any objections to the settlement by any class member**.**  Hughes Decl. ¶¶ 15 – 17.

## II.  ARGUMENT

### A.  The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects

For court approval of a class action settlement, Rule 23(e) requires that the settlement be procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Courts examine the "negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions. *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008.)  In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotation marks omitted); *see also Dupler v. Costco Wholesale Corp.*, 705F. Supp. 2d 231, 238 (E.D.N.Y. 2010). Here, both procedural and substantive considerations support approving the Settlement.

### 1)  Procedural Fairness Considerations Support Approving this Class Action Settlement

A "*presumption* of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995) (emphasis added).  If the settlement was achieved through experienced counsels'

arm's length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *129 (S.D.N.Y. July 27, 2007); *In re BankAmerica Corp. SecuritiesLitig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Here, the Settlement was reached after 16 months of litigation during which the Parties engaged in extensive discovery and numerous motions. Mallon Decl. at ¶ 6. The parties were finally able to reach an agreement after two settlement conference sessions with Magistrate Go. *Id.* These arm's-length negotiations involving counsel well versed in the FCRA and a Magistrate Judge raise a presumption that the settlement they achieved meets the requirements of due process. *Wal-Mart Stores*, 396 F.3d at 116.

## 2) The Second Circuit's Standard for Examining Substantive Fairness of Class Action Settlements Favors Granting Final Approval

More than three decades ago the Second Circuit, in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), set forth the analytical framework for evaluating the substantive fairness of a class action settlement. This framework, known as the *Grinnell* factors, guides district courts by setting out the following factors for determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7)

the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of this Settlement.

**i)      Litigation Through Trial Would be Complex, Costly, and Long**
         **(*Grinnell* Factor 1)**

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Class. *See Dupler*, 705 F. Supp. 2d at 239 (continuing litigation would require "time and expense of discovery, a likely motion for summary judgment by 11 defendant … and, if necessary, a trial."). Moreover, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *Dupler*, 705 F. Supp. 2d at 239 (recognizing that further litigation of class claims would require resolution of several complex issues).

This case is no exception to these general rules, with 7,259 Class Members. A complicated trial could well be necessary, involving extensive testimony by Defendant, Plaintiffs, and numerous Class Members. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the Parties' disputes. The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of judicial approval of the Settlement.

ii)      **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). Lack of objection to a settlement strongly favors judicial approval. *See, e.g., In re EVCI Career Colls. Holding Corp. Sec. Litig*., 2007 U.S. Dist. LEXIS 57918, at *6. Here, no Class Member has objected to the Settlement, and only one has requested exclusion. *See* Baily Aff. at ¶¶ 15, 16.  This response demonstrates that the Class approves of the results achieved on its behalf and supports judicial approval. *See Dupler*, 705 F. Supp. 2d at 239-240 (with 127 opt outs and 24 objections in class of over 11 million, the court stated, "[g]iven the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval.").

iii)     **Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)**

The Parties fully completed all of their discovery in this case and were prepared to proceed to trial if the case did not settle.  Accordingly, "the plaintiffs had sufficient information on the merits of the case to enter into a settlement." *Dupler*, 705 F. Supp. 2d at 240 (quoting *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian &German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotations omitted).  "If all discovery has been completed and the case is ready to go to trial, the court obviously had sufficient evidence to determine the adequacy of the settlement."  *Wal-Mart,*

*supra,* 306 F.3d 96, 118 (citations omitted).  Prior to agreeing to resolve this case, plaintiffs

obtained, reviewed, and analyzed over 38,000 pages of documents produced by the defendant in

this case. Mallon Decl. at ¶ 7.  In addition, Plaintiffs' Counsel deposed five of defendant's

employees in Palo Alto. CA.  *Id. at* ¶ 8.   Further, the named plaintiff was deposed by the

Defendants.  Moreover, the Parties engaged in multiple settlement conference sessions with

Magistrate Judge Go during which they advocated their positions and engaged in a vigorous back

and forth regarding their respective claims and defenses. *Id.* at ¶ 6.  Based on the above, the

Parties were well-equipped to evaluate the strengths and weaknesses of the case. These

circumstances support a finding that the Settlement is both fair and reasonable.

### iv)      Plaintiffs Would Face Real Risks of Establishing Liability and Damages if the Case Proceeded (*Grinnell* Factors 4 and 5)

"Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171

F.R.D.104, 126 (S.D.N.Y. 1997).  Indeed, "if settlement has any purpose at all, it is to avoid a

trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F.

Supp. 917, 934 (S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, the

court "must only weigh the likelihood of success by the plaintiff class against the relief offered

by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177

(internal quotations omitted).

Although Plaintiffs believe they have a strong case, it is subject to significant risks as to

both liability and damages.  In order to succeed on plaintiffs' claims they would be required to

prove not only that Defendant violated the FCRA, but that it's violation of the statute was

"willful".  Proving a 'willful' violation of a statute is always difficult and risky, even more so

here where the defendant claims that its violation of the FCRA was essentially an 'accident' due

to a computer programming error and not the result of an intentional policy. Additionally, even if the plaintiffs were able to prove a 'willful' violation of the Act, there was still a realistic chance that a jury would award the minimum statutory damages of $100 per violation under 15 U.S.C. § 1681n(a)(1)(A)[1].  Since proof of actual injury is difficult in this case (and the defendant provided evidence during the briefing on class certification that would appear to indicate that the vast majority of class members were not actually harmed by the defendant's violation of the Act) and there is no guarantee plaintiff would be able to prove willfulness at trial (or survive a potential summary judgment motion), the parties believe that an award of $150 per class member is more than fair and reasonable under the circumstances presented here.

**v)      Obtaining and Maintaining a Class Through Trial Would Be
         Difficult (*Grinnell* Factor 6)**

The risk of maintaining class status through trial is also present. While the Court certified the Plaintiffs' proposed class, there was a risk of decertification of at least part of the class based upon defendant's argument that their actions could not possibly have been willful prior to finding out about the programming error which caused the publication of obsolete data - combined with the fact that the named plaintiff's claims arose prior to that date. *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of de-certification.").   Additionally defendant still had the option of appealing the Court's class certification Order after a trial on the merits.  Thus, this factor favors final approval.

**vi)     The Total Settlement Amount is Substantial, Even in Light of the
         Best Possible Recovery and the Attendant Risks of Litigation
         (*Grinnell* Factors 7, 8 and 9)**

Even in the light of the best possible recovery, given the attendant risks, Defendant's agreement to settle for a direct economic benefit of $1,540,000, supports a finding that the

---

[1] Pursuant to that section, statutory damages of between $100 and $1000 can be awarded where a willful violation has been established.

Settlement is fair and reasonable. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*,80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Even if Defendant could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 178 n.9); *Dupler*, 705 F. Supp. 2d at241 (given that the other *Grinnell* factors weigh in favor of settlement approval, "this factor alone does not suggest the settlement is unfair.") (internal quotations omitted)."[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974). "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982).

When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *5 (citation omitted); *Dupler*, 705 F. Supp. 2d at 241-242 (finding the settlement "especially reasonable" where "the class would face the risk of recovering

11

substantially less than the Settlement provides or nothing at all" if a jury were to find in favor of defendant).

The $1,540,000 Total Settlement Amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise. Instead, each Class Member will receive a payment without any need to show that they were actually damaged by defendant's alleged violation of the FCRA. Weighing the benefits of the Settlement against the risks associated with proceeding in the litigation, the total Settlement Amount is reasonable.

The *Grinnell* factors all weigh in favor of issuing final approval of the Settlement. Because the Settlement is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

**B.    Class Counsel is Entitled to a Reasonable Fee of Just Under Twenty-Seven Percent from the Total Settlement Amount**

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering damages on behalf of the Class. The Notice advising Class Members of the Settlement, which was approved by the Court, provides that "Plaintiffs' Class Counsel will apply to the Court for legal fees and costs of the litigation of no more than $405,000." *See* Bailey Aff., ¶¶ 6-7, Exh's. A &B (Notice). This request for an amount equal to 27% of the settlement funds for both fees, costs and expenses, which amounts to $405,000, is reasonable and well within the range approved by courts in similar litigations, and, specifically, falls squarely within the accepted range typically awarded in Second Circuit cases. *See DeMunecas v. Bold Food, LLC,*

No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010) (awarding 33% fee in $729,000 settlement); *Gilliam*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (awarding one-third fee in $450,000 settlement); *Clark v. Ecolab*, No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 76613, at * 27 (S.D.N.Y. May 11, 2010) (awarding one-third fee in $6 million settlement).

**1)      The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in a Common Fund Case**

 In class action lawsuits "public policy favors [a common fund] award" of attorneys' fees. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys must be adequately compensated for their efforts. If not, such abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method – in common fund cases like this one, courts in this Circuit prefer to award fees as a percentage of the fund. *Dupler*, 705 F. Supp. 2d at 242, quoting *Wal-Mart Stores*, 396 F.3d at 121 ("'The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution and early settlement.").

Indeed, in 2006, a district court in the Second Circuit noted that "[a]lthough the Second Circuit has vested the lower circuits with the option of using either the percentage or lodestar

method, every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach, without much case-specific analysis of the choice." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006) (citations omitted); *Maley,* 186 F. Supp. at 370 ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.") Similarly, a majority of other circuits have approved and favored the percentage method in common fund cases. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

There are many reasons why courts prefer the percentage method. First, it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores,* 396 F.3d at 121; *see also Goldberger*, 209 F.3d at 47-50.

The percentage method aligns with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order").  The percentage method is

consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany*, which held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 493 F.3d 110, 111-12 (2d Cir.2007). While *Arbor Hill* is not binding here because it does not address a common fund attorneys' fee request, the decision supports using the percentage of the fund method because, as discussed above, the method "mimics the compensation system actually used by individual clients to pay their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 397.

Second, the percentage method promotes early resolution. As the Second Circuit recently stated, it "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores*, 396 F.3d at 121; *see also Dupler,* 705 F. Supp.2d at 242, quoting *Wal-Mart Stores*, 396 F.3d at 121 ("[t]he lodestar method 'creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits.'"). The percentage method decreases the incentive for plaintiffs' lawyers to run up the number of billable hours, which courts consider to be one of the most significant downsides to adopting the lodestar method. *Karpus v. Borelli (In re Interpublic Sec. Litig.*), No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* at *32 (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)); *see also Dupler*, 705 F. Supp. 2d at 242. As the Second Circuit noted in *Goldberger*, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." 209 F.3d at

15

48-49.  While the lodestar method is still used as a cross-check when courts apply the percentage

method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d

at 50.

**2)      A Review of the Relevant Factors Supports Class Counsel's Fee Application**

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the

Second Circuit articulated six factors for courts to consider in determining the reasonableness

of fee applications:

(1) the time and labor expended by counsel;

(2) the magnitude and complexities of the litigation;

(3) the risks of litigation;

(4) the quality of representation;

(5) the requested fee in relation to the settlement; and

(6) public policy considerations.

*Goldberger,* 209 F.3d at 50 (quotations omitted). Here, all of the *Goldberger* factors weigh in

favor of granting approval of Class Counsel's fee application.

**i)      Class Counsel's Time and Labor**

Significant effort was required to achieve this settlement. Class Counsel has

investigated and prosecuted this unique FCRA action for over 19 months now. Class Counsel

successfully opposed a Motion to Dismiss, successfully prepared a Motion for Class

Certification, and opposed defendant's proposed Motion for Summary Judgment.  Class Counsel

took five depositions of the Defendant's employees, defended the Plaintiff's deposition and

reviewed and analyzed over 38,000 pages of  documents produced by the defendant in this

action. Mallon Decl.¶ ¶ 7,8.  After the Parties had reached a preliminary agreement on the terms

of Settlement, Class Counsel engaged in several weeks of negotiation to achieve the final Settlement Agreement. *Id*. at ¶ 6. Class Counsel filed motions for preliminary and final approval of the settlement. They worked with the Claims Administrator and the Defendant to ensure proper Notice to the Class.  Class Counsel has expended 474 hours of professional time (not including any additional time that will be required in the administration of the Settlement) for a lodestar of over $232,000. *Id*. at ¶¶ 4, 5. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case. *Id.* at ¶¶ 4, 5.  The requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that Class Counsel will be required to spend administering the Settlement in the future.

 **ii)**  **Magnitude and Complexity of the Litigation**

 The size and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). The legal issues involved in this Action are novel and a finding of 'willfulness' is particularly difficult to prove.  This action is one of the first of its kind in this Circuit, or indeed in the country.  Class counsel, who are amongst the most experienced FCRA litigators in the country, have discussed the issues involved here with nearly all of the other prominent FCRA attorney's nationwide and are not familiar with any other class action brought alleging FCRA "obsolescence" claims.   Many of the issues presented here, such as the meaning of "date of entry" in 15 USC § 1681c(a)(2), the potential waiver of FCRA claims as a result of an application signed by plaintiff whose plain language released defendant from any FCRA liability, and the procedural issues of certifying a nationwide class action involving numerous differences in state court laws and the procedures of state and local courts throughout

the country, were novel and complex.  In fact, to the best knowledge of Class Counsel, only a handful (or less) of national FCRA class actions have ever been successfully prosecuted,[2] and not many such statewide class actions have been successfully prosecuted.  Given these mixed questions of law and fact, this factor supports approving Class Counsel's attorneys' fee request. *See Frank*, 228 F.R.D. at 189 (mixed questions of fact and law supported court's award of attorneys' fees representing 38% of the common fund).

### iii)      Risks of Litigation

The litigation risks are also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *Grinnell,* 495 at 470. "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating on a wholly contingent basis in the face of tremendous risk. Mallon Decl. at ¶ 9.  Fair Credit Reporting class actions of this type are, by their nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of consumers in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.

Moreover, this case presented numerous and substantial hurdles to a successful recovery of statutory damages. If the case went to trial, Plaintiffs would also have to prove that defendant's violation of the FCRA was either intentional or done with a 'reckless disregard' for

---

[2] Excluding the so-called FACTA "truncation" cases brought to remedy a merchants' failure to truncate credit card numbers on consumer receipts, which is an entirely distinct sub-section of the FCRA.

its obligation to comply with the Act. Such claims can and would be disputed by Defendant's witnesses, giving rise to credibility issues and significant risk at trial.

In addition to the above risks and the risks of establishing and maintaining class certification, defendant is a modestly sized, self insured credit reporting agency, and Class Counsel faced the real possibility that Defendant could file bankruptcy if there was a significant verdict against it or be otherwise unable to satisfy a significant judgment.  Accordingly, the risk of litigation and collection weigh heavily in favor of Class Counsel's request for attorneys' fees.

**iv)    Quality of Representation**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007). Here, the recovery obtained is $1,540,000; each Class Member who is located will automatically receive a recovery of $150 and each member of the sub-class will receive a payment if they fill out a claim form. Weighing the benefits of the Settlement against the risks associated with proceeding in the litigation, the Settlement is reasonable. The settlement amounts will be available to Class Members without the uncertainty and delay of trial and appeals. This result is substantial under any measure.

**v)    Fee in Relation to the Settlement**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at **23-24 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* [quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No.

19

00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *20 (S.D.N.Y. 2003)] (internal quotation marks omitted).

The Second Circuit has held that it "error" for a District Court to "calculate[] the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel. *Masters v. Wilhelmina Model Agency*, (2nd Cir. 2007) 473 F.3d 423, 436-37. That decision flatly rejected the idea that awarding fees based on the entire fund available would result in a 'windfall' for Class Counsel. "The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not. We side with the circuits that take this approach." *Id*. At 437. See also *Aros v. United Rentals Inc.*, 2012 US Dist. LEXIS 104429, * 14 (D. CT 2012) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorney's fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlements class members who do not file claims will revert to the Defendants.") (citations omitted).

Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., Frank*, 228 F.R.D. at 189 ("[D]ue to the relatively small settlement involved here [$450,000], the requested fee award [of 40%] is necessary to compensate counsel adequately."). New York courts routinely grant requests for thirty percent or greater of the fund, in cases with settlement funds *substantially larger* than this one. S*ee e.g., Maley*, 186 F. Supp. 2d at 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *In re Warnaco Group, Inc. Sec. Litig.*, No. 00 Civ. 6266, 2004 U.S. Dist. LEXIS 13126, at *6 (S.D.N.Y. July 13, 2004) (awarding 30% fee on a $12.85 million settlement); *Taft,* 2007

20

U.S. Dist. LEXIS 9144, at * * 10-11 (awarding 30% fee on a $15 million settlement) (collecting cases holding same). Here, a fee of twenty-seven percent of the total settlement amount is reasonable.

### vi) Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 396; *see also Dupler*, 705 F. Supp. 2d at 244 ("the proposed fee award properly balances the policy goal of encouraging counsel to pursue meritorious actions while protecting against excessive fees"). The FCRA is a remedial statutes designed to protect consumers. 15 USC § 1681(a). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of the FCRA. Many courts have recognized that fee awards in cases such as this serve the dual purpose of encouraging representatives, acting as "private attorneys general," to seek redress for violations and discourage future misconduct of a similar nature. *Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970). Class actions too have been recognized as an invaluable safeguard of public rights. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I.Case Co. v. Borak*, 377 U.S. 426, 43 3-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . .be heard." *Frank*, 228 F.R.D. at 189. If courts denied "fees sufficient to compensate counsel for at least a substantial portion of the work [they]

. . . performed, no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*

Here, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee of $405,000. This award will encourage the prosecution of similar claims, thereby furthering a significant public policy goal.

* * *

Accordingly, this Court should grant Class Counsel's request for attorneys' fees because all of the *Goldberger* factors are met.

## C.     The Lodestar Cross Check Further Supports An Award To Class Counsel Of $405,000 From The Total Settlement Amount

Following the *Goldberger* decision, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *27. Courts can then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460. Courts in the Second Circuit award lodestar multipliers that range anywhere from 2 to 6. *See, e.g., Dupler*, 705 F. Supp. 2d at 245 (awarding requested fee where lodestar multiplier was about 3.3); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at **78-79 (finding that the "multiplier of 2.09 is at the lower end of the

22

range of multipliers awarded by courts within the Second Circuit); *Maley*, 186 F. Supp. 2d at 371

(finding that the "modest multiplier of 4.65 is fair and reasonable");(awarding multiplier of 3.97

times lodestar); *Rabin v. Concord Assets Group, Inc.,* No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS

18273, at **3-4, (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc.

Sec. Litig.*, No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, at **19-22, (S.D.N.Y. Aug.

24,1992) (awarding multiplier of 6).

Here, Class Counsel seek a relatively modest lodestar multiplier of 1.75, which is well

within the range of reasonability.  In calculating the lodestar for cross check purposes, the "hours

documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*,

209 F.3d at 50. Rather, the "reasonableness of the claimed lodestar can be tested by the court's

familiarity with the case[.]" *Id.*  Here, Class Counsel spent 474 hours litigating and settling this

matter over the course of 19 months (not including additional time to be expended on

administration of the Settlement). *See* Mallon Decl. at ¶¶ 4, 5. The hours result in a lodestar of

over $232,000. *Id.* at ¶ 5.  If the Court grants this motion, Class Counsel will recover less than

1.75 times their lodestar (not including additional time to be expended), compensating them for

the risks given the contingent nature of the expected compensation for services rendered, the

consequent risk of non-payment at the time of filing the suit, the superior quality of

representation, and the results achieved by the Settlement.

**D.     An Incentive Payment To The Named Plaintiff Should Be Approved**

Plaintiffs also request an incentive payment to the named plaintiff of $15,000. "'The

amount of the incentive award is related to the personal risk incurred by the individual or any

additional effort expended by the individual for the benefit of the lawsuit.'" *Dupler*, 705 F. Supp.

2d at 245, quoting *Parker*, 631 F. Supp. 2d at 279 (approving incentive awards of $25,000 and

$5,000). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *4 (E.D. Pa. Dec. 1, 2004) ($20,000 to each named plaintiff).

Here, Plaintiff Dawn Massey provided substantial support to this litigation by agreeing to step forward to serve as the sole Class Representative and fulfilling her commitments in that regard, including appearing for her deposition, preparing Declarations in support of plaintiff's motions and staying in frequent communication with plaintiff's counsel.  Moreover, an incentive award is particularly appropriate here since Ms. Massey had a legitimate claim for actual damages (for the loss of an apartment due to the obsolete record On-Site reported to her potential landlord) which she waived in order to represent the instant class.  Mallon Decl. ¶ 10.  Further, the amount requested here is reasonable and is not out of proportion to the overall settlement or the average payout per class member. The payment is therefore an appropriate.

///

///

///

///

///

///

///

///

///

24

## III. CONCLUSION

For all the foregoing reasons, plaintiffs respectfully request that the Court grant this motion for final approval of the proposed Settlement of this litigation pursuant to Federal Rule of Civil Procedure 23(e), awarding attorneys' fees and costs pursuant to FRCP 23(d)(2), awarding an incentive payment to the Class Representative, and providing for the Relief detailed in the Proposed Order for Final Approval of the Settlement, together with any other relief that this Court find stop be just, proper and equitable.

Dated: February 18, 2013

Respectfully submitted,

s/ Kevin C. Mallon
James B. Fishman (JBF-8998)
Kevin C. Mallon (KCM-4798)
 FISHMAN & MALLON, LLP
305 Broadway, Suite 900
New York, NY  10007
(212) 897-5840
Attorneys for the Plaintiffs

25